UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| WILLIAM CRAWFORD, | § | |
| --- | --- | --- |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. |
| MICHAEL J. ASTRUE, | § | SA-09-CV-0012 OG (NN) |
| Commissioner of the Social Security Administration, | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO: Honorable Orlando Garcia
United States District Judge

**Introduction**

Plaintiff William Crawford brought this action for judicial review of the final decision of the Commissioner of the Social Security Administration (the Commissioner), determining that Crawford was not disabled for the purposes of the Social Security Act (the Act) prior to the expiration of his insured status[1] and denying Crawford's application for Disability Insurance Benefits (DIB). Crawford asks the district court to reverse the Commissioner's decision and to render judgment in his favor. In the alternative, Crawford asks the district court to reverse the decision and remand the case for further proceedings.

---

[1] To be eligible for disability benefits, a person must be fully insured. *See* 20 C.F.R. § 404.110. "To be fully insured, a person needs at least six quarters of coverage, but not more than forty quarters of coverage." Nat'l Org. of Soc. Sec. Claimants Representatives, 1-2 Soc. Sec. Practice Guide § 2.03 (LexisNexis).

After considering Crawford's brief in support of his complaint,[2] the brief in support of the Commissioner's decision,[3] Crawford's reply brief,[4] the record of the SSA proceedings, the pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, I recommend affirming the Commissioner's decision.

I have jurisdiction to enter this report and recommendation under 28 U.S.C. § 636(b) and this district's general order, dated July 17, 1981, referring for disposition by recommendation all cases where a plaintiff seeks review of the Commissioner's denial of the plaintiff's application for benefits.[5]

## Jurisdiction

The district court has jurisdiction to review the Commissioner's final decision as provided by 42 U.S.C. §§ 405(g), 1383(c)(3).

## Administrative Proceedings

This is the second time Crawford's application has been before the court. In Crawford's first appeal, U.S. Magistrate Judge John Primomo recommended reversing the Commissioner's decision denying Crawford's application.[6] Judge Primomo determined that substantial evidence did not support the decision due to various errors. First, the ALJ did not focus on the relevant time frame—specifically, the time period beginning with Crawford's alleged on-set date and

---

[2]Docket entry # 10.

[3]Docket entry # 14.

[4]Docket entry # 16.

[5]*See* Local Rules for the Western District of Texas, app. C, p. 10.

[6]Cause No. SA-07-CV-37, docket entry # 15.

ending with the expiration of Crawford's insured status. Second, the ALJ relied on an opinion by Crawford's neck surgeon in assessing Crawford's credibility in regard to the condition of his knees. Third, the ALJ did not discuss relevant records/opinions from the doctor who treated Crawford's knee conditions. Fourth, the ALJ failed to address whether Crawford could ambulate effectively prior the expiration of his insured status on December 31, 2001. The district judge accepted the recommendation and remanded the case to the Commissioner for reconsideration.[7]

Since that time, the ALJ conducted a second hearing.[8] During the hearing, Crawford amended his original on-set date because he worked for many months after his original on-set date.[9] The ALJ rendered a second unfavorable decision on June 14, 2008.[10] Crawford asked the Appeals Council to review the second unfavorable decision,[11] but the Appeals Council denied the review, stating that the ALJ complied with the district court's remand order and that substantial evidence supports the ALJ's decision.[12] As a result, the ALJ's second decision became the final decision of the Commissioner for the purpose of the district court's review pursuant to 42 U.S.C. § 405(g). Crawford filed this action seeking review of the Commissioner's decision on January 14, 2009, after I denied his motion to proceed in forma pauperis.[13]

---

[7] SA-07-CV-037, docket entry #s 17 & 18.

[8] SSA record, p. 771.

[9] *Id*. at p. 780.

[10] *Id*. at p. 21J.

[11] *Id*. at p. 21H.

[12] *Id*. at p. 21A.

[13] Docket entry # 3. I denied Crawford's motion to proceed in forma pauperis because he indicated in his request that he receives $2,669 per month in veterans disability benefits and his wife

3

**Issue Presented**

Crawford's insured status expired on December 31, 2001. Consequently, the issue in this case is precisely the issue Judge Primomo identified: whether the decision that Crawford was not disabled as of December 31, 2001 is supported by substantial evidence.[14] Crawford would also be entitled to relief if the ALJ's decision does not comport with relevant legal standards.

**Analysis**

**A. Standard of Review**

In reviewing the Commissioner's decision denying disability benefits, the reviewing court is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards in evaluating the evidence.[15] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[16] Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[17]

If the Commissioner's findings are supported by substantial evidence, then they are

---

earns $3,100 per month as a teacher. Docket entry # 1. This income is sufficient to pay the filing fee. Docket entry # 2.

[14]SA-07-CV-037, docket entry # 15, p. 6.

[15]*Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

[16]*Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[17]*Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

conclusive and must be affirmed.[18] In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its judgment for that of the Commissioner.[19] Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.[20] Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[21]

**1. Entitlement to Benefits**

Every individual who meets certain income and resource requirements, has filed an application for benefits, and is under a disability, is eligible to receive benefits.[22] The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[23] A claimant shall be determined to be disabled only if his physical or

---

[18]*Martinez*, 64 F.3d at 173.

[19]*Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1021 (The court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.).

[20]*Martinez*, 64 F.3d at 174.

[21]*Id*.

[22]42 U.S.C. § 1382(a)(1) & (2).

[23]42 U.S.C. § 1382c(a)(3)(A).

mental impairment or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[24]

### 2. Evaluation Process and Burden of Proof

The Commissioner's regulations provide that disability claims are to be evaluated according to a five-step process.[25] A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.[26]

The first step involves determining whether the claimant is currently engaged in substantial gainful activity.[27] If so, the claimant will be found not disabled regardless of his medical condition or his age, education, or work experience.[28] The second step involves determining whether the claimant's impairment is severe.[29] If it is not severe, the claimant is deemed not disabled.[30] In the third step, the Commissioner compares the severe impairment with

---

[24] 42 U.S.C. § 1382c(a)(3)(B).

[25] 20 C.F.R. §§ 404.1520 and 416.920.

[26] *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[27] 20 C.F.R. §§ 404.1520 and 416.920.

[28] *Id.*

[29] *Id.*

[30] *Id.*

those on a list of specific impairments.[31] If it meets or equals a listed impairment, the claimant is deemed disabled without considering his age, education, or work experience.[32] If the impairment is not on the list, the Commissioner, in the fourth step, reviews the claimant's residual functional capacity and the demands of his past work.[33] If the claimant is still able to do his past work, the claimant is not disabled.[34] If the claimant cannot perform his past work, the Commissioner moves to the fifth and final step of evaluating the claimant's ability, given his residual capacities, age, education, and work experience, to do other work.[35] If the claimant cannot do other work, he will be found disabled. The claimant bears the burden of proof at the first four steps of the sequential analysis.[36] Once the claimant has shown that he is unable to perform his previous work, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is not only physically able to perform, but also, taking into account his exertional and nonexertional limitations, able to maintain for a significant period of time.[37] If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that he is unable to perform the alternative work.[38]

---

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *Leggett*, 67 F.3d at 564.

[37] *Watson v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002).

[38] *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

**B. Findings and Conclusions of the ALJ**

In this case, the ALJ reached his decision at step five. At step one, the ALJ found that Crawford had not engaged in substantial gainful activity since his alleged on-set date.[39] The on-set date corresponds to the day Crawford stopped working, after an on-the-job accident in which Crawford was struck on the head by a high speed door. At step 2, the ALJ found that Crawford has the following severe impairments: degenerative disc disease of the lumbar spine and degenerative joint disease of the knees.[40] The reference to degenerative disc disease of the lumbar spine is undoubtedly a typographical error because the records contains no evidence of degenerative disc disease of the lumbar spine. The correct impairment is "status post anterior cervical diskectomy and fusion" as found in the first unfavorable decision.[41] Crawford has never complained about an impairment of the lumbar spine. Crawford based his disability on pain and lack of function in his right knee.[42] Crawford has, however, complained about neck pain—a complaint consistent with status post anterior cervical diskectomy and fusion.[43] Crawford's neck impairment is not implicated by this appeal.

At step three, the ALJ determined that Crawford's impairments did not meet or medically equal an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1 (Appendix 1) prior to

---

[39]SSA record, p. 21O.

[40]*Id*. at p. 21O.

[41]*See id*. at p. 20.

[42]*Id*. at p. 68.

[43]*See id*. at p. 73.

December 31, 2001.[44] At step four, the ALJ found that Crawford was unable to perform his past relevant work,[45] and that he had the residual functional capacity to lift/carry 10 pounds, walk/stand two hours and sit six hours in an eight-hour day.[46] The ALJ also found that Crawford was limited by a 50% reduction in the range of motion in his neck.[47] At step five, the ALJ determined that, through the date last insured, there were sedentary jobs in the significant numbers in the national economy that Crawford could have performed.[48]

## C. Crawford's Allegation of Error

Crawford challenges the ALJ's step-three determination that the condition of his knees did not equal or medically equal listings 1.02B or 1.03 on December 31, 2001.[49] It is unclear why Crawford referred to section 1.02B because the ALJ did not refer to that listing and because section 1.02B applies to the function of upper extremities. This case presents a question about the function of Crawford's lower extremities. The record contains no indication that Crawford ever relied on section 1.02B. The complaint is probably a typographical error or a hold-over argument from Crawford's first appeal. In the first appeal, Crawford asserted that evaluation of his knee impairment was proper under section 1.02A or 1.03.[50] Section 1.02A applies to the

---

[44]*Id*. at p. 21P.

[45]*Id*. at p. 21U.

[46]*Id*. at p. 21Q.

[47]*Id*.

[48]*Id.* at p. 21U.

[49]Docket entry # 10, p. 5.

[50]SA-07-CV-37-FB, docket entry # 10, p. 7.

function of lower extremities. Crawford previously stated, the "key component to both of these listings [section 1.02A or 1.03] is the requirement for effective ambulation."[51] In this appeal, Crawford complains about the ALJ's finding about his ability to ambulate.[52] Because the ALJ specifically addressed section 1.03, I first address that listing.

Section 1.03 is relevant in this case because Crawford has undergone multiple knee surgeries and knee replacements. Section 1.03 applies to: "*Reconstructive surgery or surgical arthrodesis of a major weight-bearing joint*, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset." Listing 1.00B2b defines "inability to ambulate effectively." Crawford bore the burden of proving that he lacked the ability to ambulate effectively as of December 31, 2001.

The ALJ determined that the medical evidence does not show that on December 31, 2001, Crawford needed an assistive device requiring the use of both upper extremities,[53] and thus determined that Crawford did not meet or medically equal section 1.03. Crawford contends this determination is legal error because the ALJ referenced section 1.00J.[54] Crawford complains that "neither 1.02B nor 1.03 reference 1.00J. Section 1.03 may not refer to section 1.00J directly, but the ALJ's reference to section 1.00J is not legal error for the following reason.

Section 1.03 specifically refers to the definition in section 1.00B2b: *i.e.*, "Reconstructive

---

[51]*Id*.

[52]Docket entry # 10, p. 5.

[53]SSA record, p. 21Q.

[54]The ALJ wrote the following: "However, sections 1.00B2b and 1.00J define "ineffective ambulation as having insufficient lower extremity functioning to permit independent without the use of a hand-held assistive device(s) that limits functioning of both upper extremities."

10

surgery or surgical arthrodesis of a major weight- bearing joint, with inability to ambulate effectively, *as defined in 1.00B2b. . . .*"⁵⁵ Section 1.00B2b's definition refers to section 1.00J: *i.e.*, "Ineffective ambulation is defined generally as having insufficient lower extremity functioning (*see 1.00J*) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities."⁵⁶ To the extent that Crawford maintains the ALJ erred by considering only whether Crawford could ambulate without the use of a hand-held assistive device(s) that limited the functioning of both upper extremities, the ALJ did not err.

Crawford relies on the Commissioner's response during the public comment period for revisions to section 1.00B2b. Responding to criticism that the revision required individuals to use an assistive device with both hands to meet the criteria, the Commissioner stated the following: "The criteria do not require an individual to use an assistive device of any kind."⁵⁷ The Commissioner continued to explain the following:

> The explanation is intended to mean that individuals who can only walk with the aid of hand-held assistive devices requiring the use of both upper extremities would meet the definition of inability to ambulate effectively. In addition, anyone with an ineffective gait who cannot use assistive devices would also meet the definition of inability to ambulate effectively. *An individual who can walk adequately with a cane or other device that affects only one upper extremity cannot be considered as incapable of any gainful activity, but such an individual might well be found disabled at later steps of the sequential evaluation process.*⁵⁸

---

⁵⁵20 C.F.R. pt. 404, subpt. P., app. 1,§ 1.03 (italics added).

⁵⁶20 C.F.R. pt. 404, subpt. P., app. 1, § 1.00B2b (italics added).

⁵⁷66 Fed. Reg. 58026, Nov. 19, 2001.

⁵⁸66 Fed. Reg. 58027, Nov. 19, 2001.

This explanation shows the Commissioner does not require the use of hand-held assistive devices. Instead, the explanation recognizes that some people may be unable to use hand-held assistive devices and thus lack an ability to ambulate. The explanation also recognizes that a person who can walk adequately with a cane or other device that affects only one upper extremity is not necessarily incapable of any gainful activity, although there may be additional impairments that cause the person to be disabled. Section 1.00B2b's examples of inability to ambulate reflect this recognition.[59] Although "inability to walk without the use of a walker, two crutches or two canes," is an example of an inability to ambulate, the definition of "inability to effectively ambulate" still requires "having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities."[60] The evidence does not show that Crawford lacked sufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) limiting the functioning of both upper extremities.

About Crawford's lower extremity functioning, the ALJ correctly observed the following:

> Crawford alleges that his knee impairment meets the requirement of section 1.03, which provides that a person is disabled if he has had reconstructive surgery or surgical arthrodesis of a major weightbearing joint, with the inability to ambulate effective[ly], as defined in section 1.00B2b, or return to effective ambulation did not occur, or is expected not to occur, within 12 months of onset.

---

[59] 20 C.F.R. pt. 404, subpt. P., app. 1, § 1.00B2b )"[E]xamples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.").

[60] 20 C.F.R. pt. 404, subpt. P., app. 1, §1.00B2b(1).

> Claimant had left knee replacement in July 1987 (Exh. R 30) and was able to
> return to work. He had right knee replacement sometime later (Exh. AC-71) and
> it is accepted that the impairment to his right knee prevents him from engaging in
> prolonged walking and standing. However, section 1.00B2b and 1.00J define
> "ineffective ambulation as having insufficient lower extremity functioning to
> permit independent ambulation without the use of a hand-held assistive device(s)
> that limits the functioning of both upper extremities. On October 13, 2000,
> claimant told Junji Higuchi, M.D., that he was using a cane (Exh. AC-71).
> Claimant's developed what appeared to be infection in the right knee in late 2001
> resulting in the removal of the prosthesis (Exh. AC-68) for treatment of infection.
> On April 24, 2002, claimant told Dr. Emerson that he was using a walker when
> ambulating, but Dr. Emerson told him to use a cane as much as possible (Exh. R-
> 18). Claimant has the burden of showing that his impairment meets or medically
> equals a listed impairment. There has been no showing that claimant was ever
> prescribed a walker. Claimant was hospitalized for about a week in September
> 2001 where Dr. Mario Bustamante performed a revision of the right total knee
> replacement. When he was released, Dr. Bustamante noted that he could perform
> weightbearing as tolerated (Exh. AC-68). No mention was made of him needing a
> walker. The medical evidence does not show that on December 31, 2001 claimant
> needed an assistive device requiring the use of both upper extremities. Therefore,
> his knee impairment was not of the severity required by section 1.03. . . . Claimant
> does not equal any listing.

My review of the record supports the ALJ's assessment. Although the record is comprised of 791 pages, there is little medical evidence for the two years preceding the expiration of Crawford's insured status.[61] The scant evidence preceding the expiration of Crawford's insured status shows that Crawford periodically used a single cane, but nothing shows Crawford needed a walker or two canes or other assistive device that limited the functioning of both upper extremities. The ALJ's focus on the use of assistive device(s) was not improper because no evidence implicated anything else. Crawford did not use a wheelchair. He continued to drive about the community and to attend community college. He traveled from San Antonio to Plano

---

[61] *See* SA-07-CV-37, docket entry # 15, p. 16 ("Despite the extent of medical evidence, there is relatively little evidence in the record concerning plaintiff's knee condition in the two years immediately preceding expiration of his insured status.").

to see a doctor who had previously treated him. He took care of his personal hygiene. He presented no functional studies implicating the other examples of inability to ambulate.[62]

The ALJ's determination about section 1.03 is supported by the following substantial evidence: (1) a VA consultative examination by Dr. Junji Higuchi on October 13, 2000, stating that examination of Crawford's feet did not show signs of abnormal weightbearing and that Crawford uses a cane to ambulate, and stating Crawford's mobility is "obviously markedly impaired by his bilateral knee condition, with limitations in mobility and ability to walk any significant distances or climb stairs;"[63] (2) discharge instructions from Dr. Bustamante on September 28, 2001, stating that Crawford was discharged after knee surgery for "weightbearing as tolerated;"[64] (3) examination notes from Dr. Emerson on April 9, 2002, indicating that Crawford walked with a cane;[65] and (4) Crawford's testimony on September 14, 2005 that he used a cane between 1999 and 2001.[66] There is no contradictory evidence. The ALJ correctly determined that Crawford did not meet section 1.03.

The result is the same under section 1.02A. That listing applies to "*Major dysfunction of a joint(s)* . . . [w]ith: . . . [i]nvolvement of one major peripheral weight-bearing joint (i.e., hip,

---

[62]The other examples are: (1) the inability to walk a block at a reasonable pace on rough or uneven surfaces, (2) the inability to use standard public transportation, (3) the inability to carry out routine ambulatory activities, such as shopping and banking, and (4) the inability to climb a few steps at a reasonable pace with the use of a single hand rail.

[63]SSA record, p. 468.

[64]*Id*. at p. 461.

[65]*Id*. at p. 97.

[66]*Id*. at p. 693.

knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b."[67] Because the listing refers to section 1.00B2b, and in turn, section 1.00B2b refers to section 1.00J, the same analysis applies to considering Crawford met or medically equaled section 1.02A. No evidence indicates Crawford met section 1.02A.

**Recommendation**. Crawford did not meet his burden to show that he met sections 1.02A or 1.03 prior to the expiration of his insured status. The ALJ did not make an error of law. Substantial evidence supports the ALJ's step-three determination. For these reasons, I recommend denying Crawford's application for relief and affirming the Commissioner's decision.

**Instructions for Service and Notice of Right to Object/Appeal**. The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed within 14 days after being served with a copy of same, unless this time period is modified by the district court.[68] Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and

---

[67] 20 C.F.R. pt. 404, subpt. P., app. 1,§ 1.02A.

[68] 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[69] Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this memorandum and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[70]

**SIGNED** on February 23, 2010.

*Nancy Stein Nowak*
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[69]*Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root*, 200 F.3d 335, 340 (5th Cir. 2000).

[70]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).